E-FILED
Monday, 07 November, 2016 01:14:59 PM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

BRUCE LEE EVANS,
    Plaintiff,

v.

CARLYN W. COLVIN, ACTING
COMMMISSIONER OR SOCIAL
SECURTY,
    Defendant.

Case No. 4:15-CV-04165-JEH

### Order and Opinion[1]

    The Defendant-Commissioner denied the Plaintiff, Bruce Evans, disability and disability insurance benefits, which he alleged began on May 23, 2013. Evans now appeals that denial, and, for the reasons set forth, *infra*, this Court REVERSES the decision of the Commissioner, GRANTS Evans's Motion for Summary Judgment (D. 10)[2], DENIES the Commissioner's Motion for Summary Affirmance (D. 15), and REMANDS for further proceedings consistent with this Order and Opinion.

    Evans, a veteran of the war in Iraq, was in the Army from 2002 to 2005, and he served a tour in Iraq in 2003. The Veterans Administration (VA), using its own regulations, rated Evans as 90% disabled. The Administrate Law Judge ("ALJ"), who denied Evans disability and disability insurance benefits in his decision, found that Evans had severe impairments of Post-Traumatic Stress Disorder ("PTSD"), lumbar degenerative disease, and a history of recurrent right ankle sprain. However, the ALJ concluded that notwithstanding these severe impairments, Evans was capable of performing sedentary, full-time work, but with the following limitations to account for his PTSD:

---

[1] The parties consented to the jurisdiction of a U. S. Magistrate Judge. (Docket Nos. 8 & 9).
[2] Citations to the Docket in this case are cited as "D. __," and the Transcript of proceedings before the Commissioner is cited as "Tr. __."

> Due to problems with social interaction, he would do best in a socially restricted setting; considering this, any work must not require close sustained interaction with others, including supervisors and coworkers. Any work must not require more than ordinary or routine changes in work setting or duties.

(Tr. 29).

The focus of Evans's arguments before this Court is the ALJ's evaluation of his PTSD, rather than his physical impairments. This Court will therefore limit its discussion to that issue as well. Specifically, Evans argues that the ALJ failed to properly weigh the medical opinion evidence of his treating psychologist, Howard Levine, Ph.D., or that of Nurse Practitioner Nancy Wolverton ("NP Wolverton") and, having failed to properly weigh those opinions, consequently also improperly weighed Evans's own credibility.

Dr. Levine, who treated Evans for his PTSD since May of 2012, completed a Mental Impairment Questionnaire summarizing Evans's conditions on August 27, 2014. The doctor diagnosed PTSD and found Evans' had GAF score of 58. Dr. Levine opined that Evans was not a malingerer, and the signs and symptoms of his PTSD included an irritable and labile affect, hostility or irritability, anger, aggressive ideation, adversarial thoughts, difficulty concentrating, easy distractibility, intrusive recollections of a traumatic experience, persistent irrational fears, vigilance and scanning, impulsive behavior, intense and unstable interpersonal relationships, psychomotor agitation, social withdrawal or isolation, perceived danger or risks without evidence, and initial and middle insomnia. In Dr. Levine's opinion, Evans's most frequent or severe symptoms were anger, adversarial thoughts, frequent conflicts with others because of overreaction to risks without evidence, social withdrawal, aggressive behavior, verbal confrontation, and generalized inability to successfully work with others. In support of his diagnoses and assessment, Dr. Levine cited to three years of professional contact with Evans, as well as the results of a compensation and pension examination, and a PCL-S score of 75. Dr. Levine also opined that Evans experiences episodes of decompensation or deterioration in work or work like settings, evidenced by the loss of several jobs due to PTSD inspired irritability and anger, and his withdrawal from college courses secondary to inability to

2

work with faculty and other students. Dr. Levine noted that the symptoms and limitations detailed in the questionnaire were present since May 1, 2013.

Regarding Evans's functional ability, Dr. Levine opined that Evans is markedly limited in:

- the ability to perform activities within a schedule and consistently be punctual;
- working in coordination with or near others without being distracted by them;
- completing a workday without interruptions from psychological symptoms;
- interacting appropriately with the public;
- accepting instructions and respond appropriately to criticism from supervisors; and
- getting along with coworkers or peers without distracting them.

In addition to these marked limitations, Dr. Levine opined that Evans is moderately to markedly limited in:

- the ability to maintain attention and concentration for extended periods;
- asking simple questions or request assistance; maintain socially appropriate behavior; and
- responding appropriately to workplace changes.

Finally, he concluded that Evans was likely to be absent from work more than three times per month. (Tr. 572-576).

NP Wolverton, who treated Evans since September of 2013, also completed a Mental Impairment Questionnaire on April 8, 2015. (Tr. 577- 582). She reported treating Evans for PTSD, anxiety disorder, and insomnia. She noted a GAF score of 55 and agreed with Dr. Levine that Evans is not a malingerer. Evans's Signs and symptoms, according to her, included persistent or generalized anxiety, a constricted and labile affect, feelings of guilt or worthlessness, hostility or irritability, intrusive recollections of a traumatic experience, paranoia/suspiciousness, vigilance and scanning, change in personality, deeply ingrained and maladaptive patterns of behavior, impulsive or damaging behavior, intense and unstable interpersonal relationships, motor tension, pathological dependence, passivity, or aggressiveness, psychomotor agitation, and insomnia. She noted that Evans's most frequent and/or severe symptoms were ongoing episodes of disproportionally aggressive responses to strangers in public, other drivers, and

neighbors, as well as frequent confrontations with overreaction and aggressive behavior. She cited a positive screening for PTSD in support of her diagnoses and assessment.

Regarding Evans's functional abilities, NP Wolverton opined that Evans has marked limitations in:

- the ability to maintain attention and concentration for extended periods;
- performing activities within a schedule and consistently be punctual;
- working in coordination with or near others without being distracted by them;
- completing a workday without interruptions from psychological symptoms;
- performing at a consistent pace without unreasonable length or frequency;
- interacting appropriately with the public; ask simple questions and requesting assistance;
- accepting instructions and respond appropriately to criticism from supervisors;
- getting along with coworkers or peers without distracting them;
- maintaining socially appropriate behavior;
- responding appropriately to workplace changes; and
- traveling to unfamiliar places or use public transportation.

(Tr. 581).

The sum total of the ALJ's discussion of the medical opinions from Evans's treatment providers is as follows:

> The claimant's medical providers Dr. Levine and NP Wolverton completed several forms on behalf of the claimant, endorsing moderate to marked limitation in his social functioning, adaptation, and concentration, and that he would miss more than 3 days of work per month (Exhibit 9F, l0F, 12F, 15F, l 7F). Dr. Levine further states that the claimant was struggling with significant social and occupational functional deficits, and his ability to function in work setting was compromised. He reportedly managed anger poorly, which interfered with his ability to perform in a work setting (Exhibit SF). Overall, these statements are conclusory and inconsistent with the GAF assessments given to the claimant by Dr. Levine, which are routinely in the mid 50s to 60, indicating only moderate symptoms (Exhibit 7F, 79; Exhibit lF, 13; Exhibit 7F, 54; Exhibit 7F, 43; Exhibit 7F, 29; Exhibit 8F, 2). Further, neither provider documents any observations of significant symptoms that would support these evaluations of moderate to marked limitation, such as consistent uncooperative behavior, poor attention span, restlessness, inappropriate behavior, or severe agitation. Instead, the assessments appear to be based on the claimant's subjective reports. In fact, as discussed above Dr. Levine notes the claimant's condition improved with medication and that he was calmer with less anger.

4

(Tr. 36-37). As Evans argues, the ALJ's evaluation of the medical opinions of his treatment providers was woefully inadequate and contrary to the Commissioner's own regulations.

An ALJ must give controlling weight to the medical opinion of a treating source if the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence."[3] *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008), citing *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); 20 C.F.R. § 404.1527(c)(2). If the ALJ does not give such an opinion controlling weight, then he must provide "good reasons" for discounting such opinions. *Cambell v. Astrue,* 627 F.3d 299, 306 (7th Cir. 2010). Should an ALJ provide such "good reasons" for discounting a treating source's opinion, he must then decide what weight to give that opinion. *Id.* at 308. If the ALJ does not give a treating source's opinion controlling weight, the Social Security regulations require the ALJ to consider: 1) the length, nature, and extent of the treatment relationship; 2) the frequency of examination; 3) the treatment source's specialty; 4) the types of tests performed; 5) and the consistency and supportability of the source's opinion. 20 CFR § 404.1527; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

Although the ALJ did not expressly state that he refused to give Dr. Levine's opinion controlling weight. Rather, the ALJ clearly did so because had he given it controlling weight, he would have been obliged to find Evans disabled given Dr. Levine's opinion regarding Evans's marked limitations. Having declined to give the opinion controlling weight, he was obliged to decide what weight, if any, to give the opinion. *Campbell*, 627 F.3d. at 306. As the quotation from his decision demonstrates, he failed to indicate what weight he assigned the opinion. This Court, on review, has no way to determine if he gave it no weight, little weight, some weight, etc. Without stating what weight he gave to the opinion, this Court does not have enough information to review how the ALJ evaluated the opinion. This error alone requires a remand. *See Villano v.*

---

[3] Dr. Levine is an acceptable medical source under the Commissioner's regulations, although NP Wolverton is not. SSR 06-3p. Given the consistency between the two opinions, however, for purposes of the Court's discussion, the two are treated as one.

*Astrue*, 556 F.3d 558, 561 (7th Cir. 2009), *citing Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 351 (7th Cir.2005); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir.2003); Steele, 290 F.3d at 940.

Moreover, even if the ALJ had specifically indicated the weight given to Dr. Levine's opinion—something the ALJ did not do—he would have still committed reversible error in failing to properly cite any of the factors the regulations require him to consider when assigning weight to such an opinion. He failed to mention the length, nature, and extent of the treatment relationship between Dr. Levine and Evans; the frequency of Dr. Levine's examinations of Evans; Dr. Levine's specialty; the types of tests Dr. Levine performed; and the consistency and supportability of his opinion. 20 CFR § 404.1527; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).   Rather, he cherry picked only a few out of Dr. Levine's many conclusions regarding Evans's condition and stated they were "conclusory and inconsistent with the GAF assessments." He also faulted Dr. Levine for failing to provide documentary evidence in support of his opinion. However, the record is replete with treatment notes from both Dr. Levine and NP Wolverton which provide support for their conclusions—notes which even the ALJ mentions when he sets forth his treatment history in a different section of the decision.

The ALJ also failed to indicate what weight he gave the opinions of the State Agency consultants. For these, he stated:

> The opinions of the State Agency have also been considered. However, the residual functional capacity determined herein is based on all the evidence of record including evidence not before the State Agency. State Agency consultants found a limitation to medium work was appropriate; however, based upon medical records not available to the state agency showing use of a cane to ambulate, the undersigned has found a limitation to sedentary work appropriate.

(Tr. 37). Again, not a word about the actual weight he assigned these opinions.

In sum, the ALJ failed to adequately explain why he did not give Dr. Levine's opinion controlling weight, failed to state what weight he did give to the opinion, failed to explain why he gave the weight whatever weight he did give to it (if any), and made

the same errors regarding the other medical opinions in the record. There is simply not enough explanation in this record for the Court to conduct a meaningful review of the ALJ's treatment of these opinions and, consequently, the matter must be remanded for the ALJ to provide a more adequate explanation supported by the entire record in the case.

Given that the ALJ's assessment of Evans's credibility and ultimate Residual Functional Capacity cannot stand in light of his treatment of the opinion evidence in this case, on remand, he must reassess both after properly weighing and considering the medical opinion evidence in the record, as well as conduct the other steps in the process for reviewing a disability claim. Of course, if he gives Dr. Levine's opinion controlling weight as a medical source opinion, then he need not go through the other steps, as giving Dr. Levine's opinion controlling weight would require a finding that Evans is disabled.

A final word about the ALJ's treatment of the VA's finding that Evans was disabled under its regulations. Evans faults the ALJ for failing to provide appropriate reasons for why the he did not give the VA's disability finding "great weight." (D. 11 at p. 21). However, the ALJ did not err in this regard. First, unlike the medical opinions, the ALJ specifically stated that he did not give the VA's determination "great weight." He also noted in detail the differences between the VA's standards and the Commissioner's, as well as citing some of the medical evidence in the record. This explanation was sufficient, notwithstanding the Seventh Circuit's *dicta* in Hall v. Colvin, 778 F.3d 688, 691 (7th Cir. 2015), quoted by Evans. Although the court in *Hall* stated that the differences between the VA regulations and Social Security Administration regulations are "small," the court said nothing about how its conclusion on this question was supposed to impact an ALJ's decision when evaluating the VA's disability determination. Moreover, the Commissioner is neither bound by nor required to assign any particular weight to the decision of another agency; it need only explain the consideration given to such a decision, *see* 20 C.F.R. §§ 404.1504 & 416.904; SSR 06-03p, which the ALJ did in this case. Of course, on remand, the ALJ's reevaluation of the medical opinion testimony and Evans's credibility could also change what weight he chooses to assign to the VA's

determination, but to the extent that Evans argues that the ALJ's explanation of his treatment of the VA's determination was erroneous, that assertion of error is without merit.

For the reasons set forth, *infra*, this Court REVERSES the decision of the Commissioner, GRANTS Evans's Motion for Summary Judgment (D. 10), DENIES the Commissioner's Motion for Summary Affirmance (D. 15), and REMANDS to the Commissioner for a new hearing pursuant to the fourth sentence of 42 U.S.C. § 405(g). The Clerk's Office is hereby directed to enter Judgment in favor of the Plaintiff and against the Defendant. This matter is now terminated.

*It is so ordered.*

Entered on November 7, 2016

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE